NORTH CAROLINA — FRANKLIN COUNTY.
Articles of agreement made and concluded this day by and between Henry Hunter and Benjamin B. Hunter, of the one part, and Alsey Jackson and William Jackson (Miller), witnesseth, that the said Henry and Benjamin B. Hunter do agree to run a certain horse called Score, double carrying 150 pounds, against a certain horse known by the name of Brutus, carrying 145 pounds, which they, the said Alsey (22) and William Jackson (Miller), do agree to run; which race shall be run at Henry Hunter's paths near Tarborough, one quarter of a mile, on the first Thursday in April next, at or before 4 o'clock in the afternoon, for the sum of $500, to be staked in bonds with approved security, the said Hunters agreeing to give said Jacksons choice of paths and $25 as a compensation for running in the above named paths. Which race shall be entirely void provided either of the principals or either of the said horses should die before the above named day; otherwise, to be run play or pay.
In witness whereof we have hereunto set our hands and seals, this 1st day of December, 1810.
 H. HUNTER, [Seal.] BEN B. HUNTER, [Seal.] Witness: ALSEY JACKSON, [Seal.] P. C. PERSONS. WILLIAM JACKSON. [Seal.]
The plaintiffs declare upon the following breaches:
1. That the defendants did not stake their bond agreeable to the articles.
2. That the plaintiffs beat the race.
The plaintiffs proved that on the day named in the articles the ground was measured and the weights made out; that precisely at 4 o'clock one of the judges, who held the watch, claimed that fact, immediately upon which both the parties started; that plaintiff's horse came out 20 feet foremost, bearing his proper weight; start even. There was no evidence *Page 20 
that plaintiffs offered any choice of paths to defendants, or that defendants complained of not having choice. There was no evidence that either of the parties said anything respecting a stakeholder to deposit bonds with. There was evidence that the plaintiffs gave to one of the judges chosen by himself a paper-writing, of which the following is a copy:
For value received, with interest from the date hereof, we promise to pay to Alsey Jackson or Alsey Jackson and William Jackson (Miller) or order, $500.
(23) Witness our hands and seals, this 4 April, 1811.
 H. HUNTER, [Seal.] LEWIS FORT. [Seal.]
Which was delivered to his said judge, after he was chosen, the day the race was run. There was no evidence that the plaintiffs, or either of them, gave defendants any notice of the above deposit, or that the purpose thereof was explained to the depositee; but depositee conceived himself it was staked on said race. Nor was there any evidence that the plaintiffs called upon the defendants, or either of them, to make a like deposit on their part; or that either of them had notice of the deposit by plaintiffs; or that the defendants, or either of them, had ever seen the bond, or had been informed of its contents, or knew that any such was executed. The plaintiffs called a witness, who testified that he had been conversant in the rules of horse racing, and gave it as his opinion the said deposit was a proper stake, and said his opinion was confirmed on a race with a certain Colonel Bynum. The witness being pressed for time (the hour at which they were to start having nearly arrived), made a similar deposit; and that Colonel Bynum, who was reputed to be experienced in the rules of racing, being unable to make up his stake, and not running with the witness, paid the money.
There was evidence that a few minutes before the hour of 4, plaintiffs called upon defendants to make ready, the time was nearly out. Said witness also declared it was generally the case to choose a stakeholder.
It is of no importance to inquire whether the defendants made out their stakes agreeable to the contract or not, provided they lost the race. They are as much liable for one breach as two, provided the plaintiffs complied with all the requisites of the contract. But if they have omitted to comply in any one particular they are as much disabled to recover as the defendants to defend themselves successfully in case they had done so. Then, have the plaintiffs shown that they themselves stated agreeably to contract? I think they have not. (24) Because, in the first place, the bond staked by them was only *Page 21 
signed by one of them, and, in the second place, if it had been signed by both, the defendants had no notice of it, to which they had a right. Suppose the plaintiffs not to have been worth $500, had they not a right to know who the security was? It was expressly stipulated that approved security should be given, which shows that the parties distrusted each others' ability to pay. But again, what would have been the situation of the defendants in case they had won the race and the plaintiffs had been insolvent, and had said nothing about the bond pretended to be staked? Or suppose by some means, in that situation, they had come to the knowledge that such a bond was in the hands of one of the judges, could they have recovered it of him as stakeholder? He did not know himself that it was placed in his hands for that purpose, or on what account or for whose benefit it had been delivered to him.
The case is too plain to admit of a doubt. As to what the witness said about the rules of racing, it is entitled neither to notice nor respect. If such be the rules of racing, I should be sorry to consider them to be the rules of this Court, being founded neither in reason nor justice.
Judgment, therefore, for defendants.
NOTE. — All bets, contracts, etc., in relation to horse racing are declared void by the act of 1810 (1 Rev. Stat., ch. 51).